UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SFT I, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 2269 |
| v. ) | |
| ) | Judge George M. Marovich |
| ) | |
| FRANK LEO, GERARD KENNY, ) | |
| and PATRICK DANAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff SFT I, Inc. ("SFT") filed a complaint against defendants Frank Leo ("Leo"), Gerard Kenny ("Kenny") and Patrick Danan ("Danan") to enforce a guaranty.[1] SFT now moves for summary judgment against defendants Leo and Kenny. For the reasons set forth below, the Court grants the motion for summary judgment.

**I.   Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. To be considered, facts must be included in a party's statement of undisputed facts. Facts argued in briefs but not included in a party's statement of undisputed facts are not considered by the

---

[1] The Court has diversity jurisdiction over this case, because plaintiff SFT is a citizen of Delaware, defendant Leo is a citizen of Florida, defendant Kenny is a citizen of Illinois, defendant Danan is a citizen of Florida, and the amount in controversy is greater than $75,000.00. The Court has already entered a default judgment against defendant Danan.

Court, because to do so would rob the other party of his or its opportunity to show such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party who asserted a fact of its initial burden of putting forth admissible evidence to support its fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

In this case, defendant Kenny admitted most of the facts outlined in plaintiff's statement of material facts. Kenny denied some facts, but he failed to controvert those facts with citations to any evidence, let alone admissible evidence. Accordingly, with respect to Kenny, the Court deems admitted all of plaintiff's facts that were supported by admissible evidence. Defendant Leo, on the other hand, did not file a response to plaintiff's statement of facts.[2] Thus, as to Leo, SFT's facts are deemed admitted to the extent they are supported by admissible evidence. Accordingly, the following facts are undisputed (unless otherwise noted).

In or about September 2005, 215 Developer LLC ("Borrower") executed various loan documents (including a Loan and Security Agreement, a mortgage and an assignment of rents) to obtain a loan from plaintiff SFT in order to develop real estate in downtown Chicago. Defendants Leo, Kenny and Danan each had an ownership interest in Borrower. SFT, as a condition of making the loan to Borrower, required Leo, Kenny and Danan to execute a payment

---

[2]Plaintiff served defendant Leo, who is proceeding *pro se*, with the required (by Local Rule 56.2) *Notice to Pro Se Litigants Opposing Summary Judgment*.

and performance guaranty of the loan. The loan documents and guaranty were amended from time to time.

The guaranty (as amended) states, among other things:

> **WHEREAS**, Lender has required, as a condition to making the Loan and entering into and executing the Loan Agreement and the other Loan Documents, that Guarantor enter into this Guaranty.
>
> \* \* \*
>
> 2. <u>Continuing Guaranty</u>
>
> (a) This is an irrevocable, absolute, continuing guaranty of payment and performance and not of collection. This Guaranty may not be revoked by a Guarantor and shall continue to be effective with respect to the Guaranteed Obligations arising or created after any attempted revocation by Guarantor and after any Guarantor's death (in which event this Guaranty shall be binding upon Guarantor's heirs, successors and assigns). It is the intent of each Guarantor that the obligations and liabilities of Guarantors hereunder are absolute and unconditional under any and all circumstances and that until the Guaranteed Obligations are fully, finally and indefeasibly satisfied, such obligations and liabilities shall not be discharged or released in whole or in part, by any act or occurrence which might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of Guarantors. Each and every default in payment of any amounts due or performance of any obligation required under this Guaranty shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises . . . . . . The liability of Guarantors pursuant to this Guaranty is joint and several.
>
> (b) The maximum liability of the Guarantors to pay the Guaranteed Obligations shall not exceed $22,787,500 in the aggregate, plus interest (but not Exit Interest) on the Loan to the extent such interest exceeds the amount of funds available from the Debt Service Reserve.
>
> \* \* \*
>
> 3. <u>Waivers</u>
>
> \* \* \*
>
> (b) Each Guarantor hereby waives any rights and defenses which such Guarantor might have as a result of any representation, warranty or statement made by Lender or its agents to such Guarantor in order to induce Guarantor to execute this Guaranty and further waives any other circumstance that might otherwise constitute a legal or equitable discharge or defense of the Guarantor.
>
> \* \* \*
>
> (e) Each Guarantor further waives any defense to the recovery by Lender against such Guarantor of any deficiency or otherwise to the enforcement

of this Guaranty or any security for this Guaranty based upon Lender's election of any remedy against such Guarantor or Borrower, including the defense to enforcement of this Guaranty by virtue of any 'anti-deficiency' statutes and their application following a non-judicial foreclosure sale.

(f) Without limiting the foregoing or anything else contained in this Guaranty, each Guarantor waives all rights and defenses that Guarantor may have because Borrower's Loan is secured by real property. This means, among other things:

(I) That Lender may collect from such Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower; and

(ii) If Lender forecloses on any real property collateral pledged by Borrower: (x) the amount of the Loan may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (y) Lender may collect from such Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right such Guarantor may have to collect from Borrower. This subsection 3(f) is an unconditional and irrevocable waiver of any rights and defenses Guarantors may have because Borrower's Loan is secured by real property.

\* \* \*

4. <u>Events and Circumstances Not Reducing or Discharging Guarantor's Obligations.</u>

\* \* \*

It is the unambiguous and unequivocal intention of Guarantors that Guarantors shall be obligated to pay and perform the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, except for the full and final payment and satisfaction of all Guaranteed Obligations.

5. <u>Payment by Guarantor</u>. If the Guaranteed Obligations, or any part thereof, are not punctually paid or performed, as the case may be, Guarantors shall, immediately on demand and without protest or notice of protest, pay the amount due thereon to Lender, at its address set forth above or as otherwise designated by Lender. Such demand(s) may be made at any time coincident with or after the time for payment or performance of all or part of the Guaranteed Obligations. Such demand shall be deemed made if given in accordance with Section 17 hereof. It shall not be necessary for Lender, in order to enforce such payment or performance by any Guarantor, first to institute suit or exhaust its remedies against any security which shall ever have been given to secure the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the indebtedness evidenced by the Note or

Guaranteed Obligations. No set-off, counterclaim, reduction, or diminution of any obligations, or any defense of any kind or nature which any Guarantor has or may hereafter have against Borrower or Lender shall be available hereunder to Guarantors.

\* \* \*

16. <u>GOVERNING LAW</u>. GUARANTOR AGREES THAT THIS GUARANTY AND ALL RIGHTS, OBLIGATIONS AND LIABILITIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS.

\* \* \*

20. <u>Expenses</u>. Each Guarantor agrees to fully and punctually pay all costs and expenses, including, without limitation, reasonable attorneys' fees, court costs and costs of appeal, which Lender may incur in enforcing and collecting the Guaranteed Obligations.

(Guaranty).

The Borrower failed to make any payment to SFT. That failure constituted an Event of Default under the loan agreement. In October 2008, SFT sent the Borrower and the Guarantors a notice of default. The notice demanded that Guarantors "pay Lender the Guaranteed Obligations plus all other obligations of Guarantors under the [Payment] Guaranty and the other Loan Documents." The notice also stated that, "failure to immediately remit such amounts to Lender may result in the exercise of Lender's rights and remedies under the [Payment] Guaranty and the other Loan Documents." As of that time, Borrower owed SFT more than $36,000,000.00 in principal. As of January 14, 2011, the amount of interest (but not Exit Interest) due on the loan was $11,065,281.31.

Defendants Leo and Kenny have made no payments to SFT under the Guaranty.

## II. <u>Summary Judgment Standards</u>

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

Under Illinois law, "a guaranty is a legally enforceable contract that must be construed according to its terms, so long as they are clear and unambiguous." *Federal Dep. Ins. Corp. v. Rayman*, 117 F.3d 994, 998 (7th Cir. 1997). Waivers of defenses, within a guaranty, are enforceable under Illinois law. *See Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 577 (7th Cir. 1995).

In this case, SFT has put forth undisputed evidence that defendants Leo and Kenny breached the Guaranty. The Guaranty states, among other things, that it "is an irrevocable, absolute, continuing guaranty of payment and performance and not of collection." (Guaranty at §2(a)). Under the Guaranty, the "maximum liability of the Guarantors to pay the Guaranteed Obligations shall not exceed $22,787,500 in the aggregate, plus interest (but not Exit Interest) on the Loan . . ." (Guaranty §2(b)). It further states, "If the Guaranteed Obligations, or any part thereof, are not punctually paid or performed, as the case may be, Guarantors shall, immediately on demand and without protest or notice of protest, pay the amount due thereon to Lender, at its

address set forth above or as otherwise designated by Lender." (Guaranty at § 5). SFT put forth undisputed evidence that the Guaranteed Obligations were not paid by Borrower and that SFT demanded payment from Leo and Kenny. SFT put forth undisputed evidence that Leo and Kenny failed to pay. Accordingly, SFT has put forth evidence that Leo and Kenny breached the Guaranty.

Leo and Kenny each make one argument in opposition to SFT's motion for summary judgment. Kenny's argument is that because SFT filed in the Circuit Court of Cook County a separate action for foreclosure on the original mortgage (a fact which SFT admits), SFT cannot prevail in this suit unless and until SFT prevails on the foreclosure claim. Kenny argues that until the Circuit Court rules, there can be no evidence of default on the original loan. The Court disagrees for several reasons. First, the plain language of the guaranty makes it clear that SFT need not pursue the Borrower before enforcing the guaranty. *See* Guaranty § 5 ("It shall not be necessary for Lender, in order to enforce such payment or performance by any Guarantor, first to institute suit or exhaust its remedies against any security which shall ever have been given to secure the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the indebtedness evidenced by the Note or Guaranteed Obligations."). Second, the Seventh Circuit has affirmed a decision to enforce a guaranty even when other litigation on an underlying loan was still proceeding. *See Chrysler Credit Corp. v. Marino*, 63 F.3d 574 (affirming district court's decision to enforce guaranty even after noting that the action on the guaranty was filed after the separate litigation on the underlying loan "got bogged down"). Thus, the Court rejects Kenny's one argument in opposition to the motion for summary judgment.

Leo, too, makes one argument in opposition to SFT's motion for summary judgment. Leo asserts that SFT acted in bad faith. This is an affirmative defense, and Leo bears the burden of proof. Leo, however, failed to file a statement of facts supported by admissible evidence. He has put forth no admissible evidence to support his bad faith affirmative defense. Accordingly, Leo has failed to establish bad faith.

Plaintiff SFT has established that it is entitled to judgment as a matter of law. Thus, the Court grants plaintiff's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment. Defendants Leo and Kenny are jointly and severally liable for $22,787,500.00 in principal and $11,065,281.31 in interest to January 14, 2011.

In its motion, plaintiff asked to be allowed to supplement its interest calculation to include the time between January 14, 2011 and the date of judgment. Neither defendant objected. The Court grants plaintiff until September 7, 2011 to file a supplemental interest calculation.

ENTER:

*George M. Marovich*

George M. Marovich
United States District Judge

DATED: August 23, 2011